IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRITTNEY MEYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12cv754-TFM |
| | ) | (WO) |
| LINCARE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION and ORDER**

**I. INTRODUCTION**

Plaintiff Brittney Meyer ("Plaintiff" or "Meyer"), a former employee of Defendant Lincare Inc. ("Defendant" or "Lincare"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Specifically, she asserts that Lincare discriminated against her on the basis of her gender by terminating her from her employment. In addition, she claims that Lincare retaliated against her for taking time off from work for FMLA leave.

This court has jurisdiction over the Title VII claim pursuant to 42 U.S.C. § 2000e-5 and the FMLA claim pursuant to 29 U.S.C. § 2617(2). Pursuant to the provisions of 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

Now pending before the court are the Motion for Summary Judgment and the Motion to Strike or in the Alternative Motion to Allow Reply filed by Defendant. The court has carefully reviewed the Motions and the supporting and opposing briefs and evidentiary materials and concludes that the Motion to Strike is due to be DENIED and the Motion for Summary Judgment and Motion to Allow Reply is due to be GRANTED.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine

whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

### III. FACTS

Viewed in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the following facts are taken as undisputed for the purpose of summary judgment. In April 2010, Meyer began working as a sales representative at Lincare, a company which provides respiratory care and equipment to the homes of patients. (Def's Ex. B, Adams' Affid., p. 2.) When beginning work at Lincare, Meyer watched a video concerning sexual harassment in the workplace. (Def's Ex. A, Meyer's Dep., p. 50.) She also received a copy of the Employee Handbook and signed an "Employee Handbook

Acknowledgment Form," indicating that she agreed to abide by the policies set forth in the handbook.  (Doc. No. 29-12;  Doc. No. 29-13, p. 2.)

In May 2010, Meyer's supervisor, Danny Stephens, promoted her to Center Manager. (*Id.*; Def's Ex A, Meyer's Dep., p. 14.)  Shortly after her promotion, Meyer hired Danny Phillips as a service representative and Shannon Boswell as a customer service representative.  (Meyer's Dep., p. 28.)

Meyer met all of her sales goals until she underwent gall bladder surgery in June 2011.  (*Id.*, p. 43.)  Meyer requested and was granted FMLA leave effective June 30, 2011. (Def's Ex. B, Adams' Affid., p. 8.)  Her physician ordered that she return to work on July 11, 2011 with restrictions to lift no more than ten pounds until August 10, 2011.  (*Id.*, p. 9.) Lincare's Human Resource Department determined that it would be unable to accommodate the ten pound lifting restriction and allowed Meyer to remain on FMLA leave.  (*Id.*)  Meyer subsequently provided a medical certification from her physician indicating that she could return to work on August 15, 2011.  (*Id.*)

A few days before returning to work, Meyer called Stephens and requested additional FMLA leave because her father was suffering from severe respiratory failure and required several medical tests, including an open biopsy, to determine whether he had cancer. (Meyer's Dep., p. 88.)  Stephens told her that she could not extend her FMLA leave and that she "will have [her] ass back in that office bright and early Monday morning."  (*Id.*, p. 58.) Meyer hung up the phone and called Mary Bennett, a Lincare human resources representative.  (*Id.*)  Bennett advised Meyer that she was allowed to take intermittent leave

and to submit the appropriate paperwork. (*Id*., p. 59.)

Meyer returned to work bright and early on the morning of August 15, 2011. Upon Meyer's return to the office, Stephens issued her a Final Written Warning, which cautioned:

> In the process of confirming the specifics regarding your recent leave of absence, it was noted that you did not report your absences for the week of January 17, 2011. Since you are a salaried employee, you were paid for the time, so the fact that you never reported or entered your time off was not caught until we were calculating your available vacation time to be paid out for your leave.
>
> While this may have been an oversight on your part, the fact is that your time records are not an accurate representation of the actual time you have worked, which is a violation of Lincare Major Infraction #11 - Falsification of Company documents/records.
>
> As an employee of Lincare, you are required to comply with all company policies and procedures. As a manager, you are held strictly to this requirement, as you are setting the example for your staff. You are required to report all of your time off to our Area Secretary so that it can be properly documented in the timekeeping system.
>
> The final written warning is being issued to formally advise you that if you do not demonstrate immediate and sustained improvement in the areas addressed herein, while maintaining overall satisfactory job performance, further corrective action, up to and including employment termination, will occur.
>
> The responsibility for improving lies with you. If you are unclear about your responsibilities or the company's expectations, please advise me immediately.

(Doc. No. 29-11, p. 11; Def's Ex. 5.) Meyer did not formally dispute the information in the written warning by using any of the problem resolution procedures listed in the Employee Handbook. (Def's Ex. B, Adams' Affid., p. 10.)

Upon submitting the proper documentation concerning her father's medical treatment,

5

Meyer was granted intermittent FMLA leave on August 30, September 1, 8, and 9, October 7, 25, and 27, and November 3 and 10, 2011. (*Id.*) During the second week of September, Stephens met with Meyer to discuss problems with her productivity, including her failure to meet her monthly goal of 15 setups with "+5 growth" throughout 2011.[1] (Adams' Affid., p. 11; Def's Ex. 5.) In a letter dated October 13, 2011, Stephens notified Meyer that she was placed on probation and that her employment would be terminated if she did not demonstrate satisfactory performance improvement. (Def's Ex. 5, Probation Letter.) Meyer was also provided a written action plan, listing areas in which she needed improvement, including center performance, job duties, leadership skills, and professionalism. (Def's Ex. 5, Action Plan). In addition, Stephens ordered Meyer to send him an email every Thursday with a weekly outline of her work activities. (Doc. No. 1, Pl's Comp., p. 3.)

Despite being granted intermittent leave on November 10, 2013, Meyer went to her office before business hours – approximately 30 minutes before the respiratory center opened -- to prepare her weekly email for Stephens. (Meyer's Dep., p. 54.) Meyer was wearing her workout clothes and boots. (Pl's Comp., p. 4; Pl's Ex. E.) Later that day, Stephens received an email from Phillips, which complained of the following:

> Jon Stepens [*sic*]:
>
> A few months ago while working in the file room, [Meyer] came by and her hand went across my butt. She said she was sorry and did not mean to do that and said, "Oh I guess you can get me on sexual harassment. A few weeks ago

---

[1] Meyer does not agree that she failed to meet her goals prior to taking FMLA leave in June 2011. (Meyer's Dep., p. 197.)


>   she came up front where me and Shannon was and put her hand on my shoulder and rubbed my arm saying she needed something long, pause hard pause and cold and then she said she was talking about a coke then giggled. On 11-10-11 I came in the office at 7:45 to go do a suction pump set up [and] about the same time [Meyer] came in and had only a t-shirt [and] no bra, tight leggings and bedroom slippers. I could see through her thin tight fitting t-shirt. She said she did not know anyone was here and took her hand to cover herself up after talking with her about a minute or two. She went to her office and I went to the warehouse to get the pump. She came back to warehouse and ask[ed] me what I was going to do today. After talking with her several minutes she then covered herself. I went back to my office and she went in her office. She came to the door of my office to tell me to tell Shannon she was not going to be here today and that she was going to take every Thursday FMLA off with her dad. Once again she put her hands up to cover herself. Anfter [*sic*] she talked with we [*sic*] a few minutes uncovered. As she was leaving she had [an] armful of papers and folders with her. I am telling you this because I feel uneasy with this going on, and she might say that I said something to her or tried something later on.
>
>   Danny Phillips
>   Service Representative

(Def's Ex. 9, Email to Adams dated November 11, 2011). Stephens forwarded the e-mail to Adams. (*Id.*)

Upon receiving the email, Adams began an investigation of Phillips' allegations. (Adams' Affid., p. 11.) When Adams questioned Boswell about Phillips' complaint, Boswell confirmed that she was present when Meyer made statements about the Coca-Cola bottle.[2]

---

[2] In preparation for a hearing before the State Department of Industrial Relations, Adams asked Boswell to send her an email regarding their discussion during the previous investigation. (Adams' Affid., p. 12.) In her email, Boswell made several allegations against Meyer, including the following:

> April 14 [,2010] Danny was standing at the door in the front office and Brittney was at the desk and I was coming up the hallway and I heard Danny state his back hurt [because] he had some bad setups over the weekend. I then heard Brittney state "well my vagina hurts" and then when she looked up and saw me she left the room.
>
> June 7th Danny was sitting in the front office where my desk is and Brittney came up the

7

(*Id.*;  Def's Ex. C, pp. 73, 79.)

In a letter from Stephens dated November 14, 2011, Meyer received the following notice of her termination:

> It has been reported and confirmed that you have demonstrated actions and behaviors in the office that are unprofessional, inappropriate, and have created an uncomfortable working environment for your staff.  These actions and behaviors violate the company's policy prohibiting sexual harassment, which is grounds for immediate discharge.  Consequently, your employment is being terminated effective immediately.

(Def's Ex. 9, Letter dated November 14, 2011.)  On the day of her termination, Meyer told Stephens that Phillips had made sexually inappropriate comments to her.  (Pl's Dep., pp. 140, 146, 209.)  Stephens responded, "I don't care."  (*Id.*, p. 209.)

## IV.  DISCUSSION

### A.  Motion to Strike

As an initial matter, before addressing the Motion for Summary Judgment, the court quickly disposes of the Motion to Strike or in the Alternative Motion to Allow Reply filed by Defendant.  (Doc. No. 33.)  Lincare argues that certain statements in Plaintiff's Response should be stricken pursuant to FED.R.CIV.P. 12(f) because her factual assertions cannot be

---

hallway [and] stated "Danny I need something hard (as she is rubbing his shoulder) long (pause) and cold (giggle), will you get me a coke you thought it was something else. (Giggle).["]

(Def's Ex. 5, Email dated January 12, 2012.)   This email, however, was not provided to Adams prior to Meyer's termination.

presented in a form that would be admissible in evidence.

The court is capable of sifting through the Response and accompanying documentation and considering only those portions which are either based on the declarant's personal knowledge or are not being offered for the truth of the matter asserted. To the extent any declarations contain information not based on personal knowledge, the court has not considered the material in resolving the Motion for Summary Judgment. Accordingly, Defendant's Motion to Strike will be denied.

To the extent Defendant requests leave to file a reply, the Motion to Allow Reply will be granted. The court construes the Defendant's Motion as including a Reply to the Plaintiff's Response to the Motion for Summary Judgment. (Doc. No. 33.)

### B. The Sexual Discrimination Claim

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in a variety of employment practices. *See Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995). In an employment discrimination case, the plaintiff bears the ultimate burden of proving intentional discrimination. *Texas Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To defeat Defendant's Motion for Summary Judgment, Meyer must establish a prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) presenting statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). Meyer has not presented any direct evidence of

discrimination nor does she rely on statistical evidence to support her discrimination claims. Thus, the court will discuss whether Meyer has established circumstantial evidence of discrimination.

Under the McDonnell Douglas framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). A plaintiff establishes a prima face case of disparate treatment based on an employee's discharge by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. *See*, *e.g.*, *McDonnell Douglas*, 411 U.S. at 802; *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). The parties do not dispute that Meyer is female and that she was terminated from her position as Center Manager. They do disagree, however, as to whether similarly situated persons outside of the plaintiff's protected class received more favorable treatment.

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to determine whether the employees are involved in or accused of the same or similar conduct" and are treated differently. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999) (citing *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d

1306, 1311 (11th Cir. 1998) *modified by*, 151 F.3d 1321 (11th Cir. 1998)).[3] The plaintiff must identify similarly situated employees, outside the protected class, who engaged in nearly identical conduct, but received better or more favorable treatment. *See Maniccia,* 171 F.3d at 1368; *Jones,* 137 F.3d at 1311.

Meyer alleges that she is similarly situated to one male employee – Daniel Phillips. Meyer argues that Phillips made sexually inappropriate and other discriminatory comments in the office but was not terminated for this behavior. The defendant asserts that Phillips is not a proper comparator because he was a Service Representative and no one, including Meyer, immediately reported to Lincare management personnel about Phillips' comments as required by the policies and procedures set forth in the Employee Handbook. (Doc. No. 33, pp. 11-12.)

Meyer asserts that on one occasion Phillips looked down another female co-worker's blouse. (Pl's Dep., p. 210.) Meyer also asserts that Phillips made the following statements to her in 2010:

- "You must have one of those padded bras on today. Your boobs are perky."

- "You have one of those N word rears."

- "You're going to get a chest cold today."

(*Id.*) Meyer maintains that she did not report the statements to management because she

---

[3] The part of this opinion dealing with the establishment of a prima facie case by circumstantial evidence was not superceded by *Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321 (11th Cir. 1998). Only the part of the Court's opinion regarding direct evidence was superceded.

11

"nipped it in the bud and handled it [her]self." (Pl's Dep., p. 211.)

Meyer and Phillips are not similarly situated. First, Meyer and Phillips held substantially different jobs. Meyer was a Center Manager and Phillips was a Service Representative. Thus, Meyer was in a supervisory position over Phillips, whereas Phillips was not in a position of leadership at Lincare. More importantly, the difference in their alleged transgressions is apparent. Phillips was not accused of wearing inappropriate clothing and there is no evidence indicating that he was on probation at the time that the allegations against him were made. In addition, a formal complaint of sexual harassment against Meyer was brought against her by Phillips in compliance with the procedures set forth in the employee handbook; however, no formal complaints of discrimination were brought against Phillips by anyone employed by Lincare. Meyer waited until the date of her termination – at least eleven months after the alleged incidents occurred – to report Phillips' behavior. Given the number of dissimilarities, Meyer's accusations of sexual harassment against Phillips are insufficient to establish that both Meyer and Phillips were similarly situated. Thus, Phillips is not a proper comparator in this case.

After careful review, the court concludes that the plaintiff has failed to demonstrate a prima facie case of discrimination under the disparate treatment theory because she has not demonstrated that she is similarly situated to any individuals outside her protected class who were treated more favorably than her.

"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield*, 115

F.3d at 1562. Meyer attempts to prove discrimination by asserting that she is not guilty of making suggestive comments or wearing inappropriate clothing. Meyer's self-serving assertion that she is not guilty does not alone establish that she was terminated because of her sex. "A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex." *Wilson*, 376 F.3d at 1087 (quoting *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000)). The role of the court "'is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments.'" *Id.* (quoting *Lee*, 226 F.3d at 1254).

> Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal . . . The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality. What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992).

Meyer fails to demonstrate a genuine dispute of material fact with respect to her Title VII claim of disparate treatment. Consequently, the Motion for Summary Judgment is due to be granted on Title VII claim.

### B. The Family Medical Leave Act Claim

Meyer asserts that Lincare retaliated against her in violation of FMLA by "penalizing [her] with unfair write-ups and other documentation, designed to justify firing [her]" because she took intermittent leave to take care of her father. (Pl's Comp., p. 5.)

Lincare argues that collateral estoppel bars Meyer from claiming that Lincare

retaliated against her for taking FMLA leave. Lincare bases this argument on the determination of the Alabama Department of Industrial Relations ("ADIR") in her unemployment compensation hearing that she is not entitled to benefits because she engaged in misconduct. Specifically, the state agency found:

> Section 25-4-78(3)(c) of the Unemployment Compensation Law states that an individual shall be disqualified from receiving benefits if she was discharged from her most recent bona fide work for misconduct committed in connection with her work. Alabama Appellate Courts have defined "misconduct" as conduct evincing a deliberate, willful or wanton disregard of an employer's interests or standards of behavior which he has a right to expect of his employee. The preponderance of the evidence shows that the claimant was at work for business purposes on November 10, 2011. At this time, the claimant was not dressed in accordance with the company dress code and was discharged as a result. This conduct falls below the standards which the employer has the right to expect and thus, constitutes misconduct. Because this misconduct is work related, the claimant will be disqualified for benefits under this section of Law.

(Def's Ex. 18.)

In Alabama, "state agency decisions have preclusive effect" on subsequent proceedings if

> (1) there is identity of the parties or their privies; (2) there is identity of the issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.

*Sparks v. Sunshine Mills, Inc.*, No. 3:12-CV-02544-IPS, 2013 WL 4760964 (N.D. Ala., Sept. 4, 2013) (quoting *Petty v. United Plating, Inc.*, 2012 WL 2047532, at *10 (N.D. Ala. 2012)).

In this case, there is identity of the parties and identity of one of the issues – whether Meyer's failure to follow the dress code warranted termination. The court is unable to

14

discern whether the defendant's second proffered reason for Meyer's termination, specifically her inappropriate comments, were fully litigated in the state court proceeding. Meyer argues that she was not provided the opportunity to rebut all of the defendant's reasons for her termination during the state agency's proceeding. It is arguable that the ADIR's determination that Meyer was terminated for failing to follow the dress code precludes Meyer's retaliation claim in this court. It is unnecessary, however, for the court to further grapple with this issue as it is clear that Meyer has failed to demonstrate a genuine dispute of material fact with respect to her FMLA claim.

Under FMLA, an employee is entitled to up to twelve weeks of leave each year to care for the employee's spouse, parent or child who has a serious health condition. *See* 29 U.S.C. § 2612(a)(1). The FMLA creates two types of claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1); and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in an activity protected by the Act. *See* 29 U.S.C. § 2615(a)(1)&(2); *see also Wascura v. City of South Miami*, 257 F.3d 1238, 1247-48 (11th Cir. 2001) (citing *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001)).

Meyer does not assert that the defendant interfered with her substantive right to take FMLA leave; instead, she argues that the defendant retaliated against her for taking leave under the Act. "To prove FMLA retaliation, an employee must show that [her] employer *intentionally* discriminated against [her] for exercising an FMLA right." *Martin v. Brevard*

15

*County Public Schools*, 543 F.3d 1261, 1267 (11th Cir. 2008) (emphasis in original). In this case, there is no direct evidence of discriminatory intent. Consequently, the court will evaluate Meyer's claim of retaliatory discharge under FLMA using the same burden-shifting approach employed in Title VII cases. *Id*. First, an employee must make out a prima facie case of retaliation by showing she engaged in activity protected by FMLA and suffered an adverse employment action causally related to that activity. *Id*. The burden then shifts to the employer "to articulate a legitimate reason for the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc*., 439 F.3d 1286, 1297 (11th Cir. 2006). "If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Martin*, 543 F.3d at 1268 (citations omitted).

The defendant does not dispute that Meyer sets forth a prima facie case of retaliation. (Doc. No. 29, p. 36.) The defendant, however, argues that it has a legitimate, non-retaliatory reason for the adverse employment action. Specifically, Lincare asserts that Meyer was terminated for wearing unprofessional business attire and making suggestive comments to a male employee. Thus, the defendant has articulated a legitimate, non-discriminatory reason for terminating the plaintiff.

Next, the court turns to whether Meyer has demonstrated that Lincare's legitimate, non-discriminatory reason for her termination is a pretext for discrimination based on her use of FMLA leave.

16

> "[A] reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v.Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). In this respect, conclusory allegations or unsupported assertions of discrimination, without more, do not raise an inference of pretext where an employer has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996). Instead, the plaintiff "must meet [the proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir.2000) (en banc). A plaintiff will withstand summary judgment by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs,* 106 F.3d at 1538 (internal quotation marks omitted).

*Gilliard v. Georgia Dept. of Corrections*, 500 Fed. Appx. 860, 865 (11th Cir. 2012).

At times, the plaintiff's brief is not a model of clarity. Meyer conflates the third element of a prima facie case of retaliation with her argument concerning pretext. (Pl's Br., p. 20.) As best as the court is able to determine, it appears that Meyer asserts that her supervisor's comments indicating that she was not permitted to take additional leave and that he did not like FMLA demonstrates a discriminatory animus. There is no dispute that Stephens incorrectly informed Meyer that she could not take additional FMLA leave. Nonetheless, the human resources department subsequently advised Stephens that Meyer was permitted to take intermittent leave to take care of her father and Lincare allowed her to do so. Furthermore, a supervisor's comments concerning his frustration with FMLA is insufficient to establish pretext. *See Rossi v. Fulton County*, *Ga*, No. 1:10-CV-4254-RWS-AJB, 2013 WL 1213205, at *25 (N.D. Ga. Feb. 8, 2013).

17

Meyer also appears to argue that the timing of the final written warning concerning her failure to report leave establishes pretext. The defendant argues that it discovered the discrepancy regarding her failure to report her personal leave when calculating her FMLA leave time. Meyer acknowledged during her deposition that "there was a time that [she was] paid for work that should not have been paid for" and that she was "paid for the days that [she was] actually not working." (Pl's Dep., p. 60, 65, 68.) Although she argues that she reported the discrepancy to an area secretary, she admits that she did not pursue the matter through the problem resolution process set forth in the employee handbook. (*Id.*, p. 67.) Other than the fact that the warning was prepared while Meyer was on FMLA leave, nothing in the record indicates that the incident had anything to do with FMLA. *See Rossi*, *supra*.

Meyer also asserts that her placement on probationary status due to a lack of productivity in September, which coincided with her intermittent leave, establishes pretext because Stephens did not meet with her to help her improve as set forth in the written action plan. Lincare's proffered reasons for terminating Meyer, however, are not related to her productivity. In addition, she admits that she did not meet her sales goals after June 2011. (Meyer's Dep., p. 43.)

Next, Meyer argues that Lincare's failure to investigate Phillips for his alleged inappropriate behavior establishes pretext because Lincare is not legitimately "gung-ho" about enforcing its sexual harassment policy. (Doc. No. 32, p. 26.) As previously discussed, Phillips was not a supervisor and no formal complaint of sexual harassment was lodged against him. In addition, Meyer did not report Phillips' alleged behavior occurring in 2010

18

until the date of her termination in November 2011. More importantly, Meyer concedes that her attire was not in compliance with the company dress code. (Pl's Dep., pp. 53-54.) This court therefore concludes that Meyer has failed to show that Lincare's legitimate reasons for her termination – violation of the dress code and making suggestive comments – were more than likely motivated by retaliation for her usage of FMLA leave.

Lincare's proffered reasons for terminating Meyer are non-discriminatory, are reasonable, and are not rebutted. With respect to an at-will employer like Lincare, "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory [or retaliatory] reason." *Chapman*, 229 F.3d at 1030. *See also Montgomery v. Ion Media Management Co.*, No. 8:10cv429-T-33AEP, 2011 WL 1791294 (M.D. Fla. May 10, 2011) (finding no pretext for retaliation in FMLA case).

This court has considered all of the evidence in the light most favorable to Meyer as the non-movant. The court grants summary judgment in favor of Lincare because Meyer has failed to come forward with evidence to demonstrate that Lincare's proffered legitimate and non-retaliatory business decision to terminate Meyer was a pretext for retaliation.

## V. CONCLUSION

Accordingly, it be and is hereby

ORDERED that:

(1) The Motion to Strike be DENIED. (Doc. No. 33.)

(2) The Motion to Allow Reply be GRANTED. (Doc. No. 33.) The court

  construes the Motion as including a Reply to the Plaintiff's Response.

(3) The Motion for Summary Judgment be GRANTED in favor of Defendant. (Doc. No. 29.)

(4) This case be DISMISSED with prejudice.

(5) The costs of this proceedings be taxed against Plaintiff.

Done this 16th day of October, 2013.

         /s/Terry F. Moorer
        TERRY F. MOORER
        UNITED STATES MAGISTRATE JUDGE